## Shenberger's License

*Lurin & Still,* for appellant.

*Anstine & Shadle* and *Horace Siegelbaum,* Deputy Attorney General, contra.

ANDERSON, J., August 17, 1945.—This case comes before the court on an appeal from the order of the Pennsylvania Liquor Control Board refusing to transfer a retail dispenser's eating place license (malt beverage license) from Continental Square to 592 Salem Avenue, in the City of York, Pa.

A hearing de novo, as required, was held, at which there appeared some 26 witnesses, including three ministers who live in the vicinity of the proposed licensed establishment, in opposition to the granting of the transfer, and seven witnesses who favored the transfer. The gist of the testimony of protestants was that there is no need for any additional beer-dispensing establishments in this community, since there are already 12 licensed outlets for beer and one State liquor store within a radius of three blocks of this proposed licensed restaurant; that there are now three licensed establishments within a radius of one block of the proposed licensed site; that the area surrounding 592 Salem Avenue is predominantly residential in character; that a parking and traffic hazard would result because of the narrow intersecting streets at this particular point; that a nuisance already exists because of the conduct of some of the patrons of the already existing licensed establishments, which would be increased by an additional licensed outlet; that there are six churches in the immediate community and that such a licensed establishment would be harmful to the program of these churches and to the children in the community. It was not denied that the applicant for the transfer, Daisy N. Shenberger, is of good repute and

that the proposed restaurant meets the physical requirements of the board.

The witnesses called by applicant testified that the area surrounding 592 Salem Avenue is both residential and commercial in character and that they have no objection to the license being transferred to this location.

There are, then, two questions presented by this appeal: (1) Does the Liquor Control Board have discretion in the matter of transferring a retail beverage license? (2) If so, has the board abused that discretion in refusing the transfer in this particular instance? The answer to the first question depends on the interpretation of section 14 of the Beverage License Law of May 3, 1933, P. L. 252, as amended by the Act of June 16, 1937, P. L. 1827, 47 PS §97:

"(a) Licenses issued under this act may not be assigned. The board, upon payment of the transfer filing fee and the execution of a new bond, is hereby authorized to transfer any license issued by it from one person to another, or from one place to another, or both, within the same municipality or township, as the board may determine; but no transfer shall be made to a person who would not have been eligible to receive the license originally, nor for the transaction of business at a place for which the license could not lawfully have been issued originally, nor, except as herein provided, to a place as to which a license has been revoked. . . ."

To properly construe this section the very purpose of the Pennsylvania Liquor Control Act of November 29, 1933 (Sp. Sess.), P. L. 15, should be borne in mind. The title of the act significantly states:

"An act to regulate and restrain the sale, importation, and use of certain alcoholic beverages; conferring powers and imposing duties upon the Pennsylvania Liquor Control Board . . .".

Section 3 (*a*) of article I of the act indicates the legislative intent and how the act should be construed and interpreted:

"This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth, and to prohibit forever the open saloon; and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose."

It is quite apparent that the act is an exercise of the police power of the State and that it is intended to protect the public welfare, peace and morals of the people and that the act should be liberally rather than strictly construed. Viewed in that light it seems evident that there was a reason for the distinct variation and difference in the wording of the act with reference to transfers of licenses and that governing the issuing of licenses in the first instance.

"Section 6. [Act of 1937] Malt and Brewed Beverages Retail Licenses. (*a*) Subject to the restrictions hereinafter provided in this act, and upon being satisfied of the truth of the statements in the application that the premises and the applicant meet all the requirements of this act and the regulations of the board, that the applicant seeks a license for a reputable hotel, eating place or club, as defined in this act, the board shall, in the case of a hotel or eating place, grant and issue, and, in the case of a club, may, in its absolute discretion, grant and issue to the applicant a retail dispenser's license."

Unquestionably there is a difference between "shall issue" as used in this section and "the board is hereby authorized to transfer any license from one person to another or from one place to another within the same locality, or both, . . . as the board may determine", and it seems evident that it was the distinct legislative intent to give the board discretion as to transferring

licenses. There have been no appellate court decisions on this question and the lower court decisions are not at all in accord. The reported cases practically all pertain to the transfer of liquor licenses rather than beverage licenses, but since the wording of the statutes relative to transfers of both types of licenses is practically identical, the cases are applicable to either type of transfer. In the following cases the provisions of the act as to transfer of licenses were held to be mandatory and the board held to be without any discretion: Larkin's License, 35 D. & C. 684; Popp's License, 41 D. & C. 500; Appeal of Gentile et al., 43 D. & C. 53; Leon's Appeal, 90 Pitts. 453; Kalanosky's License, 48 D. & C. 449; Pressman's Appeal, 53 D. & C. 507. Cases holding that the board is given a sound discretion to grant or refuse a transfer are as follows: Brodsky's License, 44 D. & C. 227; In re Transfer of Liquor License, 46 D. & C. 93; Loftus' Appeal, 50 D. & C. 422. There are also two unreported decisions of the Quarter Sessions Court of Philadelphia so holding. We have carefully examined all these cases and we do not feel that the first group of cases holding that the power is mandatory is very enlightening, as these cases consist largely of categorical and arbitrary declarations that the provision is mandatory. In fact three of the cases do not discuss the section which deals with transfers, but base their decisions on the section of the act providing for the issuing of original licenses. We are impressed with the soundness of the reasoning in the last group of cases, and a studied consideration thereof leads us to the same conclusion. Portions of the opinions holding that there is discretion in the board and the court on appeal as to the granting of a transfer seem particularly pertinent.

"To say that it is mandatory upon the board to approve the transfer if the new location is not within 300 feet of a church, hospital, school, etc., would not be within the intention of the legislature as expressed in the act itself, and would not be a liberal construction of

the act. Under such a construction of the act the holder of a license in a commercial district, who has conducted his establishment in a noisy and disorderly manner, could thrust his manner of conducting a taproom upon the people living in a quiet residential section, provided he selected a location which was not within 300 feet of certain prohibited structures, and the board would be compelled to grant the transfer and the people would be powerless to prevent him from invading the peace and quiet of the section they chose for their homes. It appears to us that this was not the intendment of the act nor the meaning of the words used in the act:" Brodsky's License, supra, p. 232.

"The boundaries of this discretion cannot be exactly defined. They lie somewhere between the legal right of the public to purchase and consume alcoholic beverages on the one hand, and the inherent dangers and menace of the liquor traffic and its necessary regulation by law for the protection of the public on the other. It follows, therefore, that the discretion vested in the Liquor Control Board must be a sound, legal discretion to carry out the purposes of the act and not an arbitrary one.

"Another approach to the interpretation of this section is the consideration of the results of the interpretation contended for by appellant. In effect it amounts to this, that the licensee has the sole, exclusive, and arbitrary right to determine whether, when, where, and how often she may transfer her establishment, so long as it remains within the municipality and without the bounds prescribed as to churches, schools, etc. If the licensee may, at her own pleasure and discretion, transfer her establishment once, under the act, then she may do it twice or a dozen times. She may play the game of hopscotch with her license over the entire area of the municipality without any human power to prevent it. At her pleasure, she may ruin the value of real estate in as many localities as she sees fit. She may compel high-type residents to sell or vacate desirable homes

because of the proximity of her saloon. It is not conceivable that the legislature intended to give any such dangerous, arbitrary, and unjust power or authority to licensees. Again, a licensee may have shown herself unfit or untrustworthy to continue at a new location. These may have been the reasons for the use of such different language in granting the power to the board as to transfers from that used with relation to the original grants of licenses:" Loftus' Appeal, supra, p. 428.

From the testimony it is apparent that this community is predominantly residential in character and that an incipient parking and traffic hazard already exists due to the nature and character of the intersecting streets and the conduct of the patrons of the already licensed establishments, which obviously verges on the point of becoming a nuisance. Certainly the addition of another license in this locality would tend to aggravate this hazard and possible nuisance. Another beverage license in this community is neither necessary to serve public convenience, nor desirable from the standpoint of local peace and order, and would be granted in the face of a large and respectable group protest from citizens of the neighborhood. It is our studied conclusion that the transfer of a license may be refused in a particular locality where it is apparent that there are already an abundance of licensed establishments and where the granting of the transfer would fairly appear to threaten the creation of a public nuisance in the nature of an interference with public peace, order and morale or with the quiet enjoyment of their properties by the citizens and residents of the affected neighborhood.

We, therefore, conclude that the Liquor Control Board, in the first instance, or the quarter sessions court on appeal, has discretion to grant or refuse the transfer of a retail malt beverage license and that the

308

board's finding and order in this proceeding were justified.

And now, to wit, August 17, 1945, for the reasons above set forth, the transfer of the retail dispenser eating place license applied for by Daisy M. Shenberger for premises 592 Salem Avenue, York, Pa., is herewith refused; the appeal is dismissed, and the order of the Pennsylvania Liquor Control Board is affirmed.